IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BRANDI L. DAWKINS, ) | |
| ) | Civil Action No. 09-1342 |
| Plaintiff, ) | |
| ) | Judge Nora Barry Fischer |
| v. ) | Magistrate Judge Lisa Pupo Lenihan |
| ) | |
| ARAMARK, WASHINGTON AND ) | Doc. No. 8 |
| JEFFERSON COLLEGE, and UNUM ) | |
| ) | |
| Defendants. ) | |
| ) | |

**REPORT AND RECOMMENDATION**

**I. RECOMMENDATION**

It is respectfully recommended that the Motion to Dismiss Plaintiff's Complaint filed by Defendant Washington and Jefferson College be GRANTED IN PART with regard to Counts I and II and DENIED IN PART with regard to Count III.

**II. REPORT**

Plaintiff Brandi L. Dawkins ("Plaintiff") brings this case against Defendants Washington and Jefferson College ("W&J"), Unum Life Insurance Company of American ("Unum"), and Aramark alleging violations of Title VII and the Pennsylvania Human Relations Act ("PHRA") based on sexual discrimination, disability/perceived disability discrimination, and retaliation. Defendant W&J submitted a Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

1

*Relevant Facts and Procedural History*

In the Complaint, Plaintiff alleges four counts against all Defendants: a count of sexual discrimination under Title VII and PHRA; a count of disability and perceived disability discrimination under Title VII and PHRA; a count of retaliation under Title VII and PHRA; and a count of aiding and abetting discrimination and retaliation under Title VII and PHRA. Plaintiff does not plead facts to support a claim of disability and perceived disability discrimination. In the Complaint's common statement of facts, Plaintiff asserts that, through her tenure at W&J, she and her female coworkers were "the subject[s] of a pervasive and severe hostile work environment which manifested itself by sexual innuendo, sexually suggestive remarks and comments, and, [sic] sexual harassment." (Doc. No. 1, ¶ 13.) Plaintiff also alleges that W&J's refusal to admit Plaintiff's daughter into Washington and Jefferson College on scholarship was an act of retaliation against Plaintiff in response to her submission of several discrimination complaints with the Equal Employment Opportunity Commission ("EEOC") and the Pennsylvania Human Rights Commission ("PHRC"). (Doc. No. 1, ¶ 23.)

Aramark assumed Plaintiff's position as well as the responsibilities of W&J's custodial work in 2003. (Doc. No. 1, ¶ 12.) Plaintiff alleges that at this time the hostile work environment became "more severe and pervasive in terms of sexual harassment, disparate treatment of female workers," and that such discrimination was directed at Plaintiff and her female colleagues by male supervisors. (Doc. No. 1, ¶ 16.) Plaintiff also alleges that Aramark then acted in retaliation against Plaintiff after Plaintiff submitted several discrimination complaints to the EEOC and the PHRC. (Doc. No. 1, ¶ 18.) The retaliation came in the form of "less desirable and more physically demanding work assignments," *id.*, the denial of "previously enjoyed over-time such that [Plaintiff's] wages were

diminished," *id.*, and the infliction of unjustified disciplinary action, Doc. No. 1, ¶ 20.  These acts caused Plaintiff to seek psychiatric counseling and eventually led to a break-down which required in-patient hospitalization.  (Doc. No. 1, ¶ 21.)  Plaintiff also alleges that Aramark wrongfully terminated Plaintiff from her position due to FMLA leave that Plaintiff claims she had not taken at the time she was fired.[1]  (Doc. No. 1, ¶ 22.)  Due to the hostile work environment, Plaintiff alleges that she suffered the following issues: mental anguish, depression, and emotional strain; loss of income and benefits; deprivation of ordinary pleasures of life; pain and suffering from the daily exposure to a hostile work environment; loss of sleep, stress, and severe anxiety; and humiliation and embarrassment.  (Doc. No. 1, ¶ 27.)

Plaintiff alleges that Unum, the entity responsible for administering Aramark's disability plan, aided and abetted in the retaliation and directly retaliated against Plaintiff by denying or delaying her health and disability benefits, which caused Plaintiff further anxiety, as well as loss of income and benefits.  (Doc. No. 1, ¶ 21.)

On November 9, 2009, W&J filed a Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. No. 8.)  W&J argues that no employment relationship exists between W&J and Plaintiff, that Plaintiff's claims are time-barred, and that Plaintiff's claim of retaliation based on W&J's rejection of admission of Plaintiff's daughter should be dismissed because W&J was unaware of Plaintiff's administrative charges at the time of W&J's action.

---

[1] Plaintiff had taken Sickness and Accident leave at the time she was terminated by Aramark, however.  (Doc. No. 1, ¶ 22.)

3

### *Standard of Review*

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 556 (2007); *Ashcroft v. Iqbal,* 129 S.Ct.1937, 1949 (May 18, 2009) (citing *Twombly*, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 556). The plausibility standard "asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of entitlement to relief.'" *Id.* (citing *Twombly*, 550 U.S. at 556-57).

The Third Circuit Court of Appeals expounded on this standard in *Fowler v. UPMC Shadyside*, 578 F.3d 303 (3d Cir. 2009), stating that:

> After *Iqbal,* it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1948. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See Id.* at 1949-50; *see also Twombly,* 505 U.S. at 555 n.3.

*Fowler*, 578 F.3d at 210; *accord. Phillips v. County of Allegheny*, 515 F.3d 224 (3d Cir. 2008) (construing *Twombly* in a civil rights context). "'Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not

4

'show [n]'-'that the pleader is entitled to relief.'" *Fowler*, 578 F.3d at 210-11 (quoting *Iqbal,* slip op. at 14). "This plausibility determination will be 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Id.*

### *Discussion*

**A.     Plaintiff's Employment Discrimination Claims**

Defendant W&J submitted a Motion to Dismiss Counts I and II of Plaintiff's Complaint for failure to demonstrate that an employment relationship existed between Plaintiff and W&J. Plaintiff brings her discrimination claims under Title VII and PHRA, which limits liability to "employers." Title VII, codified as United States Code Chapter 42, Section 2000e defines "employer" as "a person engaged in an industry affecting commerce who has fifteen or more employees for each working day in each of twenty or more calendar weeks in the current or preceding calendar year, and any agent of such a person." 42 U.S.C. § 2000e(b). "The term 'employee' means an individual employed by an employer." 42 U.S.C. § 2000e(f). Title VII makes in unlawful for an "employer"

> (1) to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or
>
> (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

42 U.S.C. § 2000e-2.

Similarly, the PHRA makes it unlawful for "any employer because of the . . . sex . . . of any individual or independent contractor, to . . . discriminate against such individual . . . with respect to compensation, hire, tenure, terms, conditions or privileges of employment or contract." 43 P.S. § 955(a). Further, the statute makes it unlawful:

5

> (d) For any person, employer, employment agency or labor organization to discriminate in any manner against any individual because such individual has opposed any practice forbidden by this act, or because such individual has made a charge, testified or assisted, in any manner, in any investigation, proceeding or hearing under this act.
>
> (e) For any person, employer, employment agency, labor organization or employee (sic), to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice.

43 P.S. § 955.

Plaintiff's Complaint alleges that Plaintiff was W&J's employee until 2003, at which time Aramark assumed Plaintiff's employment. (*See* Doc. No. 1, ¶ 12 (stating that "[o]n or around June 6, 2001, Plaintiff became employed with [W&J] as a custodian within its Custodian Department. Upon belief, in approximately 2003, [Aramark], under a contract with W&J, assumed the custodial services at the college").) Plaintiff submitted two administrative complaints against W&J and Aramark, dated July 29, 2007 and March 24, 2008, to both the EEOC and the PHRC. (*See* Doc. Nos. 8-2, 8-3.) W&J argues that the alleged discriminatory acts thus did not occur during the time that Plaintiff was employed by W&J, and W&J cannot be held liable as an employer under Title VII. W&J then proceeds to argue that, given the lack of employment relationship between Plaintiff and W&J at the time of the discriminatory acts, the only remaining way that Plaintiff could hold W&J liable for the alleged discrimination would be to present W&J and Aramark as "joint employers." *See NLRB v. Browning-Ferris Industries of Pennsylvania, Inc.*, 691 F.2d 1117, 1123 (3d Cir. 1982) (a "joint employer" relationship exists where "one employer while contracting in good faith with an otherwise independent company, has retained for itself sufficient control of the terms and conditions of employment of the employees who are employed by the other employer"). Plaintiff did not raise a joint employer theory of liability in Plaintiff's Complaint, and therefore the Court

finds it irrelevant to the current case.

It appears from the facts presented in the administrative complaints submitted in 2007 and 2008 that the alleged discrimination occurred both during Plaintiff's tenure of employment with W&J from 2001 to 2003 and during Plaintiff's tenure of employment with Aramark from 2003 forward.  (*See* Doc. Nos. 8-2, 8-3.)  In addition, throughout Plaintiff's administrative complaints, the discriminatory actions appear to be ongoing and continuous from the time Plaintiff began working for W&J to the time that Plaintiff filed the complaints, as opposed to discrete instances.  *Id.*; *see West v. Philadelphia Elec. Co.,* 45 F.3d 744, 754 (3d Cir.1995) (stating that a plaintiff may "pursue a Title VII claim for discriminatory conduct that began prior to the filing period if he can demonstrate the act is part of an ongoing practice or pattern of discrimination of the defendant"); *Rush v. Scott Specialty Gases*, 113 F.3d 476, 481 (3d Cir. 1997) (citing *West v. Philadelphia Elec. Co.*, 45 F.3d 744, 754 (3d Cir.1995)).  The facts pled by Plaintiff in the administrative complain draw a direct connection from the discriminatory acts presently before the Court to W&J, demonstrating that W&J could be held liable for discrimination. (*See* Doc. Nos. 8-2, 8-3.)  Although Plaintiff does argue that the discriminatory acts in question were ongoing and continuous in Plaintiff's Memorandum of Points and Authorities in Support of her Opposition to W&J's Motion to Dismiss and cites to relevant case law, Plaintiff's Complaint itself does not plead facts sufficient to support a claim of ongoing and continuous discrimination during the time that Plaintiff was employed by W&J.  Therefore, the Court should grant W&J's Motion to Dismiss the employment discrimination claims against W&J with leave to amend Plaintiff's Complaint within 20 days.

**B.     Plaintiff's Retaliation Claims**

Defendant W&J submitted a Motion to Dismiss Count III of Plaintiff's Complaint for failure to demonstrate that W&J's rejection of Plaintiff's daughter as a student in the college constituted retaliation against Plaintiff. Plaintiff brings her retaliation claim under Title VII.[2] W&J alleges that it was not aware of Plaintiff's administrative charges against W&J at the time Plaintiff's daughter was denied admission.

> Section 704(a) sets forth Title VII's antiretaliation provision in the following terms:
>
> It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . because he has opposed any practice made an unlawful employment practice by this subchapter, or because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

42 U.S.C. § 2000e-3(a). In order to establish a *prima facie* case of retaliation under Title VII, the Third Circuit explains that a plaintiff must show that: (1) Plaintiff was engaged in protected activity; (2) Plaintiff suffered an adverse employment action either subsequent to or contemporaneously with such activity; and (3) a causal link exists between the protected activity and the adverse employment action. *See Woodson v. Scott Paper Co.*, 109 F.3d 913, 920 (3d Cir. 1997). Further, in order to prove the causal link exists, the plaintiff must demonstrate that the employer had knowledge of the protected activity. *See Bazargani v. Haverford State Hospital*, 90 F. Supp. 2d 643, 654 (E.D. Pa. 2000), *aff'd*, 33 Fed. Appx. 647 (3d Cir. 2002) (holding that, in absence of evidence that the decisionmaker in question knew of the protected activity, plaintiff did not demonstrate a causal connection between the adverse employment action and the protected activity). The issue before

---

[2] Although this was not raised, it is worth noting that "the antiretaliation provision [of Title VII], unlike the substantive provision, is not limited to discriminatory actions that affect the terms and conditions of employment." *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 64 (2006). "The scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm." *Id.* at 67.

the Court concerns whether Plaintiff pled sufficient facts to support a *prima facie* case of retaliation.

Plaintiff's Complaint alleges that Plaintiff engaged in a protected activity - the filing of the discrimination charges with the EEOC and the PHRC - and that Plaintiff's daughter was denied entrance into Washington & Jefferson College in an act of retaliation against Plaintiff. Plaintiff posits first that she made several complaints to W&J's management regarding her working conditions as well as her complaints to EEOC and PHRC. Secondly, Plaintiff alleges that she determined upon investigation that Washington & Jefferson College accepted several employees and their children less academically qualified than Plaintiff's daughter. W&J maintains, however, that W&J was not officially notified of Plaintiff's administrative complaints until after Plaintiff's daughter was denied entrance to the College on February 21, 2008.

The Court must determine whether the Plaintiff's Complaint "pleads facts that are 'merely consistent with' a defendant's liability," and thus whether it "'stops short of the line between possibility and plausibility of entitlement to relief.'" *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 556-57). "This plausibility determination will be 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'" *Fowler*, 578 F.3d at 210-11 (quoting *Iqbal,* slip op. at 14).

Plaintiff's Complaint pleads that Plaintiff informed W&J's management about the alleged discriminatory acts both directly and through the submission of her administrative complaints, thus countering and raising a factual question in regard to W&J's claim that it did not have knowledge of the administrative complaints and discriminatory actions. In addition, Plaintiff's allegation that W&J accepted less qualified employees and their children reinforces Plaintiff's allegation that the rejection of Plaintiff's daughter's application for entry into the College could have been an act of

9

retaliation. The Court is thus able to draw the reasonable inference that W&J could be liable for retaliation against Plaintiff. Therefore, W&J's Motion to Dismiss Count III of Plaintiff's Complaint should be denied.

### III.     CONCLUSION

For the reasons set forth above, it is respectfully recommended that Defendant Washington and Jefferson College's Motion to Dismiss Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) should be DENIED as to Count III and GRANTED as to Counts I and II. It is further recommended that Plaintiff should be granted leave to amend her discrimination claims in Counts I and II of the Complaint.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.D.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of service of a copy of this Report and Recommendation to file objections. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

Dated: February 18, 2010                              By the Court:

                                                      _____
                                                      LISA PUPO LENIHAN
                                                      U.S. MAGISTRATE JUDGE

cc:     Counsel of Record

10